IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNARD TAYLOR, | No. CIV S-07-2728-GEB-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| M. CRITELLI, | |
| Defendant. | |
| _____/ | |

Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is Defendant's motion for summary judgment (Doc. 17). Plaintiff filed an opposition to the motion (Doc. 21), and Defendant filed a reply (Doc. 22).

## I. BACKGROUND

**A. Plaintiff's Allegations**

Plaintiff claims Defendant interfered with his right of access to the courts. He alleges he requested Defendant's assistance in retrieving his legal documents from another inmate after that other inmate had been moved to another housing unit. He claims Defendant agreed to assist him, but failed to do so in a timely fashion. The other inmate then died prior to

1

Defendant retrieving his documents, which were then never returned as they could not be found in the inmate's belongings. Due to Defendant's failure to retrieve the legal documents, Plaintiff argues he missed the deadline to file his state habeas petition in the California Supreme Court.

**B. Undisputed Facts**

On March 19, 2007, Plaintiff gave inmate Hackett the transcripts and other legal documents related to Plaintiff's criminal proceedings. Inmate Hackett was going to assist Plaintiff in filing a habeas petition in the California Supreme Court. On March 22, 2007, inmate Hackett was moved to a different housing unit. On that same day, Plaintiff informed Defendant that inmate Hackett had his legal documents, and requested assistance in retrieving them. Plaintiff also requested assistance from another Correctional Officer, Sims. At some point, Defendant left a note in the housing log for Officer Coleman, a second watch officer, to help Plaintiff retrieve his documents. Plaintiff was never told he could not ask any of the other officers for assistance. Inmate Hackett died about a week after March 22, 2007. When Plaintiff informed Defendant about Hackett's death, Defendant called the Investigative Services Unit (ISU to inquire about Hackett and his property. Hackett's property was inaccessible to correctional staff during the ISU's investigation into Hackett's death. Plaintiff did not inform inmate Hackett or Defendant of any pending deadline relating to his legal documents in Hackett's possession. When Hackett's property was cleared, on May 15, 2007, Plaintiff's documents could not be located among Hackett's property.

Plaintiff filed a petition for habeas corpus with the California Supreme Court on June 4, 2007. He filed the petition without the transcripts from his criminal proceedings. Plaintiff did not request an extension of time from the California Supreme Court in order to obtain the transcripts, nor did he explain why the transcripts were not included. Plaintiff's petition was summarily denied by the California Supreme Court on October 10, 2007, with no case citation or other indication as to why it was denied. Plaintiff filed his federal petition for habeas corpus on October 22, 2007 in this court. That petition was dismissed as filed beyond the

statute of limitations on April 2, 2009, and is currently on appeal.

## II. STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

/ / /

/ / /

4

## III. DISCUSSION

Here, Defendant argues he did not deprive or interfere with Plaintiff's access to his legal documents, Plaintiff suffered no actual injury as a result of Defendant's conduct, and Defendant is entitled to qualified immunity.

### A. Access to Court

Prisoners have a First Amendment right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures). This right includes petitioning the government through the prison grievance process. See id. Prison officials are required to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828. The right of access to the courts, however, only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis, 518 U.S. at 356-57. Moreover, the right is limited to non-frivolous criminal appeals, habeas corpus actions, and § 1983 suits. See id. at 353 n.3 & 354-55. Therefore, the right of access to the courts is only a right to present these kinds of claims to the court, and not a right to discover claims or to litigate them effectively once filed. See id. at 354-55.

As a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id.; see also Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007). Delays in providing legal materials or assistance which result in prejudice are "not of constitutional significance" if the delay is reasonably related to legitimate penological purposes. Lewis, 518 U.S. at 362.

/ / /

Here, Plaintiff acknowledges that on March 19, 2007, he voluntarily gave his legal documents to inmate Hackett, who was going to help him file a habeas petition. In his deposition, he stated that inmate Hackett expected it to take three to four days to complete a draft of the petition, but he did not inform inmate Hackett of any specific deadline for filing the petition. Plaintiff did not inform Defendant at any time prior to March 22, 2007, that inmate Hackett had his legal documents, but Plaintiff stated that he would stop to talk to inmate Hackett during medication line so Defendant was likely aware. On March 22, 2007, inmate Hackett was moved to a different housing unit; he was no longer housed on the same floor as Plaintiff. When Plaintiff discovered that inmate Hackett had been moved, he informed Defendant that inmate Hackett had his legal documents. Plaintiff claims Defendant agreed to assist him in recovering the documents. Defendant claims he told Plaintiff to ask for assistance from an officer on second watch as they would have more time and ability to assist. At some point, Defendant left a note for Officer Coleman, a second watch officer, to assist Plaintiff in retrieving his documents. Inmate Hackett died about one week after being moved. During the investigation into inmate Hackett's death, all of his property was inaccessible. Once the investigation was completed, a search of his property failed to locate any of Plaintiff's legal documents.

Defendant argues that Plaintiff's claim must fail as Defendant did not interfere with or deny him access to his documents, nor has Plaintiff shown any actual injury. Plaintiff argues he did show actual injury in that he missed the statute of limitations by filing his state habeas late, and without the required transcripts. Plaintiff claims his state habeas deadline was April 8, 2007, but he was unable to file his petition until June 4, 2007 and even that was done without transcript. The habeas petition was denied on October 10, 2007, without comment or citation. He then filed his federal habeas petition on October 22, 2007. This habeas petition was denied on April 2, 2009, a certificate of appealability issued, and the matter is currently on appeal.

///

In denying his federal habeas petition, the court found Plaintiff missed the statute of limitations deadline. (See 07-cv-2253-WBS-EFB, Findings & Recommendations (Doc. 26), adopted on April 2, 2009 (Doc. 28)).[1] The court reasoned that Plaintiff's conviction was final on April 2, 2006.[2] Pursuant to 28 U.S.C. § 2244(d)(1), Plaintiff had one year from that date to file his federal habeas petition, unless that time was tolled for some reason. Plaintiff was entitled to statutory tolling while he had a habeas petition pending in the Sacramento County Superior Court. His petitions were denied on April 19, 2006. Thereafter, the statute of limitations began to run, extending his time to file a federal petition until April 19, 2007. However, the court found he was not entitled to equitable tolling, thus his federal petition was filed just under six months too late. In deciding what tolling Plaintiff was entitled, both statutory and equitable, the court discussed Plaintiff's mental health and the death of his inmate helper. The court found a lack of evidence about what Plaintiff did in an attempt to be diligent in protecting his rights. While there was evidence in that case about the death of Plaintiff's inmate helper (presumably inmate Hackett), the evidence there was that Plaintiff's inmate helper died in May 2007, and his federal petition had to be filed no later than April 2007. Therefore, the court concluded that the death of Plaintiff's helper was not a factor in the missed deadline.[3]

///

---

[1] The court takes judicial notice of these proceedings and findings. The court may take judicial notice pursuant to Federal Rule of Evidence 201 of matters of public record. See U.S. v. 14.02 Acres of Land, 530 F.3d 883, 894 (9th Cir. 2008). Thus, this court may take judicial notice of state court records, see Kasey v. Molybdenum Corp. of America, 336 F.2d 560, 563 (9th Cir. 1964), as well as its own records, see Chandler v. U.S., 378 F.2d 906, 909 (9th Cir. 1967).

[2] This date was calculated based on a February 1, 2006 judgment, and because Plaintiff did not file an appeal, the judgment was final 60 days thereafter.

[3] The undersigned notes that the evidence in this case as to inmate Hackett's death is slightly different than that presented in Plaintiff's federal habeas case. In the habeas proceedings, the court found the inmate helper died in May 2007. The undisputed fact evidence presented in this case was that inmate Hacked died in March 2007. Whether this would have made a difference in Plaintiff's habeas proceedings is not for the undersigned to decide.

1      Defendant here argues that because the California Supreme Court did not deny his
2 state habeas petition on the grounds that it was untimely or failed to include the necessary
3 transcripts, Plaintiff can not show any actual injury.  This argument, however, was formed prior
4 to the court's decision in his federal habeas proceedings.  The denial of his federal habeas
5 petition on the basis of a missed statute of limitations deadline is sufficient injury to survive a
6 motion for summary judgment.
7      However, the court's analysis does not end there.  The court must still decide
8 whether there is a genuine issue of material fact as to whether Defendant actually interfered with
9 Plaintiff's right of access to the court.  The undisputed facts show that Plaintiff voluntarily gave
10 his legal documents to inmate Hackett.  This is not a case where his legal documents were
11 confiscated.  Instead, Plaintiff is claiming that Defendant interfered with his right of access to the
12 court by failing to retrieve the documents he voluntarily gave to another inmate in a timely
13 fashion.  The time frame at issue here is approximately one week.  The parties agree that from the
14 time inmate Hackett was moved and Plaintiff requested his legal documents back, to the time of
15 inmate Hackett's death, was approximately one week.  This time period began on March 22,
16 2007.  Defendant has offered evidence, which Plaintiff has not contradicted, that he was then off
17 on March 23, 2007 and March 24, 2007, returning to duty on March 25, 2007.  During this same
18 time frame, Plaintiff did ask at least one other officer for assistance, officer Sims.  It is unclear to
19 the court what, if anything, officer Sims did to assist Plaintiff.  However, Plaintiff has also agreed
20 that Defendant left officer Coleman a note, for officer Coleman to assist Plaintiff.  Prior to
21 learning of inmate Hackett's death, Plaintiff did speak with officer Coleman who agreed to help
22 Plaintiff.  However, when officer Coleman went to retrieve the documents, inmate Hackett was
23 already dead.
24      Based on these facts, the undersigned cannot find that a one week delay in
25 attempting to retrieve legal documents Plaintiff voluntarily gave to another inmate violated
26 Plaintiff's rights.  "The temporary deprivation of an inmate's legal materials does not, in all cases,

rise to a constitutional deprivation." Vigliotto v. Terry, 873 F.2d 1201, 1202-03 (9th Cir. 1989) (ruling that a "three day deprivation does not rise to constitutional proportions").

Plaintiff did not inform Defendant that he had a pending court deadline; in fact Plaintiff admitted during his deposition that at the time he was not aware of any pending court deadline. Plaintiff was free to, and did, ask other officers for assistance. Defendant did attempt to assist Plaintiff in retrieving his documents by placing a call to the floor inmate Hackett had been moved to and by leaving a note for a second watch officer, Colemen, to assist Plaintiff. Although Plaintiff never received his property back, this was due to it being lost in inmate Hackett's property, not due to Defendant's actions. There is also no claim that Defendant is in any way responsible for the delay in searching inmate Hackett's property after his death or the failure to locate the documents therein.

The undersigned finds Defendant did not violate Plaintiff's right of access to the courts, as guaranteed by the First Amendment.

**B.** **Qualified Immunity**

If the court were to determine that Defendant did violate Plaintiff's right of access to the courts, the next question would be whether Defendant is immune from damages.

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. See id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he

right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have "reasonably but mistakenly believed that his . . . conduct did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

The first two steps in the qualified immunity analysis involve purely legal questions. See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal determination based on a prior factual finding as to the government official's conduct. See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

///

The threshold inquiry is whether the facts alleged, when viewed in the light most favorable to the plaintiff, show that Defendant violated Plaintiff's constitutional rights. As discussed above, the undersigned finds that the undisputed evidence shows Plaintiff's rights were not violated. However, the undersigned will assume for the moment that Plaintiff's complaint shows a constitutional violation, and that the First Amendment right is clearly established in the context of the facts outlined by Plaintiff. Turning, then, to the final step of the qualified immunity analysis, the undersigned finds that, viewing the facts in the light most favorable to Plaintiff, Defendant could have reasonably (and correctly) believed that his conduct did not violate plaintiff's rights. In particular, the undisputed evidence establishes that Plaintiff voluntarily gave inmate Hackett his legal documents. When Plaintiff informed Defendant that inmate Hackett still had his legal documents after he was moved, Defendant, at the very least, left a note for another officer to assist Plaintiff in retrieving them. Plaintiff also stated in his deposition that Defendant called down to the first floor, where inmate Hackett had been moved, ostensibly to inquire as to Plaintiff's documents.[4] Certainly, there are no facts alleged that Defendant purposefully interfered with Plaintiff's access to the court. Again, this is not the case where Defendant confiscated Plaintiff's documents or knowingly destroyed the documents. There was a delay in retrieving the documents from inmate Hackett. However, the unfortunate outcome (the lost documents) were due to inmate Hackett's death not any significant delay in retrieving Plaintiff's documents.

For these reasons, the undersigned concludes that Defendant is entitled to qualified immunity.

/ / /

/ / /

---

[4] Plaintiff stated in his deposition that although he could see Defendant using the phone, he could not hear was what being said. However, he believed Defendant was calling to the first floor regarding his documents.

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendant's motion for summary judgment or summary adjudication (Doc. 17) be granted;

2. Judgment be entered in favor of Defendant; and

3. The Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 20 days after being served with these findings and recommendations, any party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 16, 2010

　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Craig M. Kellison
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE